UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT DE VITO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LIQUID HOLDINGS GROUP, INC., BRIAN M. STORMS, KENNETH D. SHIFRIN, PETER R. KENT, RICHARD SCHAEFFER, BRIAN FERDINAND, JAY BERNSTEIN, DARREN DAVY, DAVID FRANCESCANI, WALTER RAQUET, THOMAS ROSS, VICTOR SIMONE, JR., DENNIS SUSKIND, ALLAN ZAVARRO, and SANDLER, O'NEILL & PARTNERS, LP.,<br><br>Defendants. | Civil Action No. 2:15-cv-06969-KM-JBC |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANT
ROBERT D. KELLER TO DISMISS THE AMENDED COMPLAINT**

Of Counsel:

John J. Clarke, Jr. (admitted *pro hac vice*)
john.clarke@dlapiper.com
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Tel.:    (212) 335-4920
Fax:    (212) 884-8520

Michael D. Hynes
michael.hynes@dlapiper.com
Steven R. Marino
steven.marino@dlapiper.com
DLA PIPER LLP (US)
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078-2704
Tel.:    (973) 520-2550
Fax:    (973) 520-2551

Attorneys for Defendant Robert D. Keller

Dated:  October 31, 2016

## Table of Contents

Page

Table of Authorities ........................................................................................................ ii

PRELIMINARY STATEMENT ............................................................................1

SUMMARY OF ALLEGATIONS .........................................................................3

STANDARD OF REVIEW......................................................................................6

ARGUMENT...........................................................................................................8

    I.      PLAINTIFFS HAVE NOT ALLEGED ANY ACTIONABLE
           SECURITIES VIOLATION BY MR. KELLER...................................................8

          A.     There Is No Private Right of Action Against Mr. Keller
                   for Alleged Misstatements or Omissions in
                   Liquid Holdings Filings...........................................................................8

          B.     Plaintiffs Have Not Alleged that Mr. Keller Engaged in
                   Any Deceptive or Manipulative Act.........................................................13

    II.     PLAINTIFFS HAVE NOT PROVIDED PARTICULARIZED
           FACTUAL ALLEGATIONS SUPPORTING A "STRONG
           INFERENCE" OF SCIENTER ..........................................................16

    III.    PLAINTIFFS HAVE FAILED TO ALLEGE LOSS CAUSATION ..................19

    IV.    MR. KELLER IS NOT LIABLE AS A "CONTROLLING PERSON"
           FOR ANY ALLEGED SECURITIES VIOLATION BY
           LIQUID HOLDINGS.........................................................................20

CONCLUSION.......................................................................................................23

Table of Authorities

Page(s)

Cases

*Amgen Inc. v. Connecticut Retirement Plans & Tr.*,
___ U.S. ___, 133 S. Ct. 1184 (2013) ................................................................. 12

*ATSI Comms., Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007) .......................................................... 13, 14, 15, 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................. 20

*Belmont v. MB Inv. Partners*,
708 F.3d 470 (3d Cir. 2013) .................................................................... 21, 22

*Blue Chip Stamps v. Manor Drug Stores*,
421 U.S. 723, 95 S. Ct. 1917 (1975) ................................................................. 9

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
511 U.S. 164, 114 S. Ct. 1439 (1994) ............................................................... 9

*City of Edinburgh Council v. Pfizer, Inc.*,
754 F.3d 159 (3d Cir. 2014) ......................................................................... 8

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005) ................................................................................. 19

*Ernst & Ernst v. Hochfelder*,
425 U.S. 185, 96 S. Ct. 1375 (1976) ............................................................. 9, 13

*Ganino v. Citizens Utilities Co.*,
228 F.3d 154 (2d Cir. 2000) ......................................................................... 17

*GFL Advantage Fund, Ltd. v. Colkitt*,
272 F.3d 189 (3d Cir. 2001) .................................................................. 13, 14, 15

*GSC Partners CDO Fund v. Washington*,
368 F.3d 228, 237 (3d Cir. 2004) .................................................................... 17

*Gurary v. Winehouse*,
190 F.3d 37 (2d Cir. 1999) .......................................................................... 13

*In re Advanta Corp. Sec. Litig.*,
180 F.3d 525 (3d Cir. 1999) ................................................................. 7, 16, 18

*In re Alstom S.A. Sec. Litig.*,
406 F. Supp. 2d 433 (S.D.N.Y. 2005) .......................................................... 12, 13, 21

Page(s)

*In re Bio-Tech. Gen. Corp. Secs. Litig.*,
 380 F. Supp. 2d 574 (D.N.J. 2005) ................................................................18

*In re DVI, Inc. Securities Litigation*,
 639 F.3d 623 (3d Cir. 2011) ....................................................................11, 12

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
 574 F.3d 29 (2d Cir. 2009) ...........................................................................19

*In re Hansen Natural Corp. Sec. Litig.*,
 527 F. Supp. 2d 1142 (C.D. Cal. 2007) ........................................................19

*In re Intelligroup Sec. Litig.*,
 468 F. Supp. 2d 670 (D.N.J. 2006) ...............................................................19

*In re Manulife Fin. Corp. Sec. Litig.*,
 276 F.R.D. 87 (S.D.N.Y. 2011) .....................................................................19

*In re Nice Systems, Ltd. Sec. Litig.*,
 135 F. Supp.2d 551 (D.N.J. 2001) ...........................................................17, 18

*In re Royal Dutch/Shell Transport Sec. Litig.*,
 No. 04-0374 (JAP), 2006 WL 2355402 (D.N.J. Aug. 14, 2006) ..................12

*In re Suprema Specialties, Inc. Sec. Litig.*,
 438 F.3d 256 (3d Cir. 2006) ................................................................7, 18, 19

*In re Take-Two Interactive Sec. Litig.*,
 551 F. Supp. 2d 247 (S.D.N.Y. 2008) ...........................................................19

*Inst. Investors Grp. v. Avaya, Inc.*,
 564 F.3d 242 (3d Cir. 2009) ..........................................................3, 6, 7, 16

*Janus Capital Grp., Inc. v. First Deriv. Traders*,
 564 U.S. 135, 131 S. Ct. 2296 (2011) .......................................................9, 10

*Jones v. Intelli-Check, Inc.*,
 274 F. Supp. 2d 615 (D.N.J. 2003) .........................................................14, 15, 16

*Lentell v. Merrill Lynch & Co., Inc.*,
 396 F.3d 161 (2d Cir. 2005) .....................................................................12, 19

*Matrixx Initiatives, Inc. v. Siracusano*,
 563 U.S. 27, 131 S. Ct. 1309, 179 L.Ed.2d 398 (2011) ..................................8

*Melder v. Morris*,
 27 F.3d 1097 (5th Cir. 1994) .........................................................................17

Page(s)

*OFI Asset Mgmt. v. Cooper Tire & Rubber*,
___ F.3d ___, 2016 WL 4434404 (3d Cir. Aug. 22, 2016) .....................................................7

*Rabin v. NASDAQ OMX PHLX LLC*,
___ F. Supp. 3d ___, 2016 WL 1619272 (E.D. Pa. Apr. 21, 2016) ................................ 14, 19

*Rochez Bros., Inc. v. Rhoades*,
527 F.2d 880 (3d Cir. 1975) ...................................................................................... 21, 22

*Santa Fe Indus. v. Green*,
430 U.S. 462, 97 S. Ct. 1292 (1977) ........................................................................... 1, 9

*S.E.C. v. Lucent Techs., Inc.*,
610 F. Supp. 2d 342 (D.N.J. 2009) ...................................................................................10

*Stichting Pensioenfonds ABP v. Merck & Co., Inc.*,
C.A. No. 05-5060 (SRC), 2012 WL 3235783 (D.N.J. Aug. 1, 2012) ....................................12

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
552 U.S. 148, 128 S. Ct. 761 (2008) ..........................................................................*passim*

*Super. of Ins. of N.Y. v. Bankers Life & Cas. Co.*,
404 U.S. 6, 92 S. Ct. 165 (1971) ........................................................................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308, 127 S. Ct. 2499 (2007) ................................................................ 3, 6, 16, 17

*Trustcash Holdings, Inc. v. Moss*,
668 F. Supp. 2d 650 (D.N.J. 2009) ......................................................................... 10, 12

## Statutes, Regulations and Rules

15 U.S.C. § 78j(b) ........................................................................................................*passim*

15 U.S.C. § 78t(a) ...................................................................................... 2, 6, 20-22

15 U.S.C. § 78u-4(b) ........................................................................................2, 7, 16

17 C.F.R. § 240.10b-5 .................................................................................... *passim*

17 C.F.R. § 240.12b-2 ...................................................................................................21

Fed. R. Civ. P. 9(b) .................................................................................................1, 7

Fed. R. Civ. P. 12(b)(6) ..........................................................................................1, 6

Defendant Robert D. Keller respectfully submits this memorandum of law in support of his motion to dismiss the claims asserted against him in the amended complaint in this action pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Robert D. Keller did not sign, make or authorize any of the public statements challenged in this action.  Plaintiffs do not allege otherwise.  Long before the events at issue, Mr. Keller contributed businesses to a predecessor of Liquid Holdings Group, Inc. ("Liquid Holdings" or the "Company") and received equity in return.  Although he had been a director and officer when Liquid Holdings was a private company, those roles ended before the Company's initial public offering in July 2013 ("IPO").

Despite the lack of any connection between Mr. Keller and the disclosures at issue, plaintiffs contend that Mr. Keller should be held liable for a supposed manipulative "scheme." According to plaintiffs, they were misled into believing that the IPO offering price for Liquid Holdings stock was reasonable because *the Company* failed to disclose in the offering materials that Mr. Keller and another stockholder had agreed, before the IPO, to give some of their personal Liquid Holdings shares to Douglas Von Allmen, a pre-IPO investor in the Company who also purchased stock in the IPO.  Plaintiffs contend that the private share transfer reduced the average price per share paid by Mr. Von Allmen in the IPO.  But whatever its other flaws (and there are many), that claim depends on an alleged omission by Liquid Holdings, and the federal securities laws do not allow any private right of action against *Mr. Keller* on that basis.

Even if decisions limiting the private right of action for securities fraud in such cases did not bar plaintiff's "scheme" claim, the complaint does not allege any "deceptive act" or "manipulation" by Mr. Keller.  The only allegedly "deceptive" conduct plaintiffs allege Mr. Keller engaged in was to give away stock that he personally owned at a time when there *was*

*no market* for the shares.   There are no allegations of matched orders, wash sales, or other deceptive practices "intended to mislead investors by artificially affecting market activity." *Santa Fe Indus. v. Green*, 430 U.S. 462, 476, 97 S. Ct. 1292, 1302 (1977).  Indeed, plaintiffs do not allege that Mr. Keller engaged in any trading activity.  Giving stock away, or agreeing to do so, is not "manipulation."

Plaintiffs similarly fail to allege facts giving rise to the required "strong inference" that Mr. Keller acted with scienter.  *See* 15 U.S.C. § 78u-4(b)(2).  Mr. Keller had no role with Liquid Holdings during plaintiffs' alleged "class period," and he is not alleged to have made or authorized any of the challenged disclosures.  That precludes any inference of scienter based on his alleged knowledge of any alleged omissions from those public statements.  Plaintiffs graspingly assert that Mr. Keller was motivated to engage in fraud by the prospect of a deferred bonus if the Company successfully completed an IPO after his departure.  But that contention makes no sense because the shares Mr. Keller gave away, allegedly to make sure the IPO occurred, were worth many times more than the bonus the IPO triggered.

Plaintiffs also fail to meet their burden to allege that any alleged actions by Mr. Keller were the cause of plaintiffs' loss.  According to the complaint itself, "the Company's stock had already lost virtually its entire value" by September 2015, when Liquid Holdings disclosed Mr. Keller's alleged agreement to give away stock.  Compl. ¶ 2.  Plaintiffs do not even attempt to connect the $0.01 per share decline in the Company's stock price on the day of that filing to the "revelation" of Mr. Keller's alleged agreement rather than other factors.

Finally, plaintiffs purport to include Mr. Keller among the defendants against whom they assert "controlling person" claims under section 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), yet none of the allegations in that claim concern Mr. Keller.  Mr. Keller was

neither a director nor an officer of Liquid Holdings during the "class period," and there are no other allegations that would support an inference that he had the authority or capacity to "control" any of the Company's challenged disclosures. Plaintiffs have made no attempt to allege his "culpable participation" in any such disclosure.

The claims asserted in the amended complaint against defendant Robert D. Keller lack any factual or legal basis, never should have been included in the amended complaint, and should be dismissed with prejudice.

## SUMMARY OF ALLEGATIONS[1]

Liquid Holdings is a Delaware corporation that had its principal place of business in New York, New York and Hoboken, New Jersey. Compl. ¶ 36. Until its bankruptcy filing, the Company developed and provided proprietary software technology that "seamlessly integrate[d] trading, real-time risk management, accounting, reporting and administration tools in a single platform for the financial services community." Declaration of Michael D. Hynes dated October 31, 2016 ("Hynes Decl."), Exh. A ("Prospectus") at 54.

The Company's initial public offering became effective on July 26, 2013. Compl. ¶ 1. Several years later, on January 27, 2016, the Company filed a chapter 11 bankruptcy petition in the U.S. Bankruptcy Court for the District of Delaware. The case was converted to a chapter 7 liquidation on February 25, 2016. Compl. ¶ 36.

Long before the IPO, during 2012, defendant Robert D. Keller and others contributed certain businesses to a predecessor of the Company in return for equity. Compl. ¶ 62. At the

---

[1] The well-pleaded allegations of the amended complaint are assumed to be true solely for purposes of this motion to dismiss and only to the extent they are not contradicted by the documents incorporated by reference, including filings with the Securities and Exchange Commission, of which the Court can take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 2509 (2007); *Inst. Investors Grp. v. Avaya, Inc.*, 564 F.3d 242, 246 n.3 (3d Cir. 2009).

time of the IPO and thereafter, Mr. Keller's only role with the Company was as one of its stockholders. *See* Compl. ¶ 76. Mr. Keller had been a director and an officer of Liquid Holdings when it was privately held, but he stepped down from the last of those positions effective as of May 1, 2013. Compl. ¶ 26; Prospectus at 6, 116, 134.

A letter agreement Mr. Keller entered into with the Company concerning his departure provided for the possibility of a deferred cash bonus if the Company completed an IPO within the following eighteen months. Compl. ¶ 26; Prospectus at 134. The amount of the bonus would be based on a pre-determined formula tied to the date of the Company's IPO – the later the IPO, the higher the bonus. *See* Prospectus at 134. On August 1, 2013, a week after the IPO, Mr. Keller was paid $254,247 in accordance with the letter agreement. Compl. ¶ 26.

The amended complaint alleges that Mr. Keller participated in a deceptive or manipulative "scheme" with defendants Brian Ferdinand and Douglas Von Allmen. Compl. ¶¶ 307-19. Until April 2014, Mr. Ferdinand was a member of the Company's board of directors and its head of corporate strategy. Compl. ¶ 16. Mr. Von Allmen was not a director or officer of the Company, but he had made investments in the Company before the IPO. Compl. ¶¶ 25, 71, Plaintiffs allege that Mr. Von Allmen and Mr. Ferdinand purchased shares valued at $16.2 million in the IPO. Compl. ¶ 312. There is no allegation that Mr. Keller purchased shares in the IPO.

According to plaintiffs, these three "Scheme Defendants" engaged in a deceptive and manipulative scheme by entering into an agreement before the IPO under which Mr. Keller and Mr. Ferdinand promised to give Mr. Von Allmen some of the Liquid Holdings shares they personally owned after the post-IPO lock-up period expired. Compl. ¶ 311. Plaintiffs allege that pursuant to that agreement, in February 2014 (seven months after the IPO), entities controlled by

Mr. Keller and Mr. Ferdinand transferred 732,932 shares of the Company's common stock to an entity owned by Mr. Von Allmen "for no cash consideration."  *Id.*

According to the complaint, the agreement to give Mr. Von Allmen shares once the lock-up restrictions expired was not disclosed by Liquid Holdings in the IPO offering materials or in the Company's subsequent periodic reports.  There is no dispute that the actual transfer of shares was disclosed soon after it occurred.  *See* Compl. ¶ 222.  In a Form 8-K filed on September 24, 2015, the Company disclosed a number of different matters, including that the post-lock-up period transfer of personally owned shares to Mr. Von Allmen apparently had been made pursuant to an agreement entered into before the IPO.  *Id.*  Plaintiffs allege that on the day Liquid Holdings filed the Form 8-K, the price of Liquid Holdings common stock "decreased from $0.09 per share . . . at open to $0.08 per share at close . . . ."  Compl. ¶ 225.

Plaintiffs contend that by entering into the agreement and transferring Liquid Holdings shares to Mr. Von Allmen for no cost, "the Scheme Defendants led investors to believe that Liquid's stock was more valuable than it truly was" because the IPO offering materials did not disclose that Mr. Von Allmen, who would be purchasing shares in the offering at the $9.00 per share offering price, also would be receiving additional shares from Mr. Keller and Mr. Ferdinand at no cost.  Compl. ¶ 312.

The amended complaint contains other allegations that mention Mr. Keller, but plaintiffs have not asserted a claim against him based on those allegations.  First, plaintiffs allege that Mr. Keller sold $5 million in Liquid Holding stock to the Company's chief executive officer, Brian Storms, but that the Company did not disclose that Mr. Storms paid for the stock with a promissory note instead of cash and the amount of that note later was reduced.  Compl. ¶¶ 89, 101, 128, 222.  Second, plaintiffs allege that in the third quarter of 2014, Liquid Holdings

learned of possible collection problems from its largest customer, QuantX, with which Mr. Keller previously had been affiliated.  Compl. ¶¶ 153-54.[2]

Plaintiffs name Mr. Keller as one of the putative "Scheme Defendants" in Count IV of the complaint, asserting a claim for alleged violations of section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) thereunder.  Compl. ¶¶ 307-319.  The "Scheme Defendants" also are listed in the heading for Count V, asserting a claim for "controlling person" liability under section 20(a) of the Exchange Act.  However, all of the factual allegations in that count concern the alleged "control" exercised by a separate group, the "Section 20(a) Defendants," in which Mr. Keller is not included.  *See* Compl. ¶¶ 320-25.

## STANDARD OF REVIEW

"'[F]aced with a Rule 12(b)(6) motion to dismiss a § 10(b) action, courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true.'"  *Inst. Investors Grp. v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 127 S.Ct. 2499, 2509 (2007)).  In doing so, courts must "'consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"  *Avaya*, 564 F.3d at 252 (quoting *Tellabs*, 551 U.S. at 322, 127 S. Ct. at 2509).

A complaint in a private securities fraud action also must meet heightened pleading requirements that were added to the federal securities laws to "restrict abuses in securities class-

---

[2] Plaintiffs mistakenly allege that Mr. Keller was a member of "Liquid's management" who had a duty to disclose the QuantX liquidity issues to Liquid Holdings investors when they arose in late 2014.  Compl. ¶¶ 153, 157.  Mr. Keller was not a member of "Liquid's management" at the time.  *See* Compl. ¶ 26.  Indeed, Mr. Keller's roles with both QuantX and Liquid Holdings had ended before the QuantX issues allegedly arose.  But that factual inaccuracy in plaintiffs' allegations need not be resolved to address the current motion.

action litigation." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276 n.8 (3d Cir. 2006) (internal quotation marks omitted).  First, the complaint must "specify each allegedly misleading statement, why the statement was misleading, and, if an allegation is made on information and belief, all facts supporting that belief." *Avaya*, 564 F.3d at 252-53 (citation and internal quotation omitted); *see* 15 U.S.C. § 78u-4(b)(1).  "Second, the complaint must, 'with respect to each act or omission alleged to violate [the Exchange Act], state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind.'" *Id.* at 253 (emphasis added) (quoting 15 U.S.C. § 78u-4(b)(2)(A)).

The particularity in pleading required by these provisions "echoes precisely Fed. R. Civ. P. 9(b)." *Avaya*, 564 F.3d at 253 (quoting *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999)); *see* Fed. R. Civ. P. 9(b) (party claiming fraud must "state with particularity the circumstances constituting fraud").  "Only a complaint that provides sufficiently particularized factual pleading and gives rise to a strong inference of scienter can survive a motion to dismiss." *OFI Asset Mgmt. v. Cooper Tire & Rubber*, ___ F.3d ___, 2016 WL 4434404, at *5 (3d Cir. Aug. 22, 2016).

# ARGUMENT

## I. PLAINTIFFS HAVE NOT ALLEGED ANY ACTIONABLE SECURITIES VIOLATION BY MR. KELLER.

Plaintiffs cannot sue Mr. Keller under Rule 10b-5(b) for alleged misstatements or omissions when he did not make any of the challenged statements or have any alleged responsibility for them.  As a result, they have attempted to sue him for purportedly employing a "device, scheme, or artifice to defraud" or engaging "in any act, practice or course of business which operates . . . as a fraud . . ."  17 C.F.R. § 240.10b-5(a), (c).  There is no basis for such a claim.

### A. There Is No Private Right of Action Against Mr. Keller for Alleged Misstatements or Omissions in Liquid Holdings Filings.

Section 10(b) of the Exchange Act prohibits the "use or employ[ment], in connection with the purchase or sale of any security . . . [, of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe."  *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 167 (3d Cir. 2014) (quoting 15 U.S.C. § 78j(b)). "The Supreme Court has implied a private cause of action [under the statute] from the text and purpose of section 10(b)."  *Pfizer*, 754 F.3d at 167 (citing *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37, 131 S. Ct. 1309, 1317, 179 L.Ed.2d 398 (2011)).[3]

---

[3] Section 10(b) of the Exchange Act makes it unlawful "[t]o use or employ, in connection with the purchase or sale of a security . . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations" as the Securities and Exchange Commission ("SEC") may prescribe.  15 U.S.C. § 78j(b).  SEC Rule 10b-5, in turn, provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a)   To employ any device, scheme, or artifice to defraud,
>
> (b)   To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

In a series of decisions, however, the Court has strictly limited that implied private right of action and has cautioned that "the § 10(b) private right should not be extended beyond its present boundaries." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 165, 128 S. Ct. 761, 773 (2008).[4]  In its landmark decision in *Central Bank*, the Court held that there was no private right of action for "aiding and abetting" an alleged violation of section 10(b) because such a claim was not mentioned in the language of the statute, and allowing private suit for aiding and abetting might result in private lawsuits against "persons who do not engage in [] proscribed activities at all, but who give a degree of aid to those who do." *Central Bank*, 511 U.S. at 175-76, 114 S. Ct. at 1447.

In *Stoneridge*, the Court revisited that issue.  The plaintiffs there sought to evade the *Central Bank* holding by asserting a "scheme liability" theory under Rules 10b-5(a) and (c) – the subsections cited by plaintiffs here in their claim against Mr. Keller – based on "deceptive acts" by vendors that allegedly had engaged in round-trip transactions to help an issuer meet its earnings targets.  The Court concluded that the vendors' allegedly deceptive acts in agreeing to the round-trip payments were too remote from the issuer's alleged securities violations to allow a private suit against them by investors.  *Stoneridge*, 552 U.S. at 159-62, 128 S. Ct. at 770-71. Permitting "scheme liability" under the circumstances, the Court reasoned, would "revive in

---

> (c)     To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5(a), (c).

[4] *See Janus Capital Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135, 131 S. Ct. 2296 (2011); *Stoneridge*, 552 U.S. 148, 128 S. Ct. 761; *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 114 S. Ct. 1439 (1994); *Santa Fe Indus. v. Green*, 430 U.S. 462, 97 S. Ct. 1292 (1977); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S. Ct. 1375 (1976); *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S. Ct. 1917 (1975); *Super. of Ins. of N.Y. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 92 S. Ct. 165 (1971).

substance" the implied cause of action against aiders and abettors that *Central Bank* held would impermissibly extend the statute. *Id.* at 162-63, 128 S. Ct. at 771.

Most recently, in *Janus*, the Court limited private claims under section 10(b) to those asserted against the "maker" of an allegedly fraudulent public statement. For this purpose, the Court held, "the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Janus*, 564 U.S. at 142, 131 S. Ct. at 2302. As a result, the investment adviser defendant in *Janus* could not be sued for alleged misstatements in a mutual fund's prospectuses even though the investment adviser had "caused [the] prospectuses to be issued . . . and made them available to the investing public . . ." *Id.* at 140-42, 131 S. Ct. at 2300-02.

Plaintiffs' "scheme" claims against Mr. Keller disregard this Supreme Court authority. The complaint alleges that Mr. Keller's sole "deceptive act" was to enter into an agreement before the Liquid Holdings IPO to give some of his own Liquid Holdings shares to Mr. Von Allmen after the IPO lock-up period expired. Compl. ¶ 318. There is nothing inherently "deceptive" about such an entirely lawful agreement, and entering into the agreement would not by itself be a basis for any claim under Rules 10b-5(a) or (c). *See Trustcash Holdings, Inc. v. Moss*, 668 F. Supp. 2d 650, 662 (D.N.J. 2009) (allegedly "sham" recourse loans could not be considered "inherently deceptive conduct" for purposes of "scheme" claim under Rules 10b-5(a) and (c)); *S.E.C. v. Lucent Techs., Inc.*, 610 F. Supp. 2d 342, 360 (D.N.J. 2009) ("scheme" claim under Rules 10b-5(a) or (c) "must involve 'sham' or 'inherently deceptive' transactions").

In asserting their "scheme liability" claim against Mr. Keller, plaintiffs contend that investors were misled only because the alleged agreement to transfer shares was not disclosed *by Liquid Holdings*. Their own description of the claim demonstrates this clearly:

. . . By executing the Stock Transfer Agreement and transferring the additional shares of Liquid stock for no cost, the Scheme Defendants <u>led investors to believe</u> that Liquid's stock was more valuable than it truly was.  <u>Liquid's Registration Statement</u> indicated that the IPO would sell 3,175,000 shares at a price of $9.00 per share.  Further, <u>Liquid's Registration Statement indicated</u> that Von Allmen and Ferdinand believed that the IPO price was fair and reasonable, given that they were purchasing $16.2 million of Liquid shares at $9.00 per share in the IPO.  In fact, Von Allmen . . . purchased his shares for a price materially lower than $9.00 per share after accounting for the additional shares he received under the Stock Transfer Agreement.  . . . <u>By creating the appearance</u> that Ferdinand and Von Allmen were purchasing a significant amount of Liquid stock at the IPO price, the Scheme Defendants <u>misled investors to believe that the IPO price was fair and reasonable</u>.

Compl. ¶ 312 (emphasis added).  As alleged against Mr. Keller – who was neither an officer nor a director of Liquid Holdings at the time – this claim is a poorly disguised claim for aiding and abetting alleged disclosure violations by Liquid Holdings.  *See* Compl. ¶¶ 309-12.  Mr. Keller himself had no duty to disclose the alleged agreement to give away his shares, and plaintiffs do not allege otherwise.

In *Stoneridge*, the Supreme Court considered and rejected a virtually identical attempt to reframe an impermissible aiding and abetting claim as a claim for "scheme liability." *Stoneridge*, 552 U.S. at 159-62, 128 S. Ct. at 770-71.  The plaintiff in *Stoneridge* argued that a claim under Rules 10b-5(a) and (c) for "scheme liability" was appropriate because the financial effects of the vendors' round-trip transactions were "deceptive acts" that misled investors because they were incorporated into the issuer's financial statements.  The Court rejected that argument; under such an approach, the Court concluded, "the implied cause of action [under section 10(b)] would reach the whole marketplace in which the issuing company does business; there is no authority for this rule." *Id.* at 160, 128 S. Ct. at 770.  The Third Circuit was presented with a similar argument in *In re DVI, Inc. Securities Litigation*, 639 F.3d 623 (3d Cir. 2011), where plaintiffs asserted a "scheme liability" claim against a law firm for its role in preparing an

issuer's allegedly fraudulent financial reports.   The appellate court held that *Stoneridge* precluded such a claim.  *Id.* at 646-48.[5]

The *Stoneridge* and *DVI* courts are not alone in rejecting "scheme" claims under Rules 10b-5(a) and (c) when "premised on the alleged misrepresentations or omissions that form the basis of a Rule 10b-5(b) claim."  *Stichting Pensioenfonds ABP v. Merck & Co., Inc.*, C.A. No. 05-5060 (SRC), 2012 WL 3235783, at *8 (D.N.J. Aug. 1, 2012); *see Lentell v. Merrill Lynch & Co. Inc.*, 396 F.3d 161, 177 (2d Cir. 2005) ("We hold that where the sole basis for such claims is alleged misrepresentations or omissions, plaintiffs have not made out a market manipulation claim under Rule 10b-5(a) and (c) . . . ."); *In re Royal Dutch/Shell Transport Sec. Litig.*, No. 04-0374 (JAP), 2006 WL 2355402, at *8 (D.N.J. Aug. 14, 2006) (same); *In re Alstom S.A. Sec. Litig.*, 406 F. Supp. 2d 433, 476 (S.D.N.Y. 2005) (same).  The securities laws do not allow a putative class of Liquid Holdings investors to sue Mr. Keller for "scheme" liability based on *the Company's* alleged failure to disclose his entirely lawful agreement to give another person some of his shares.[6]

---

[5] In *Amgen Inc. v. Connecticut Retirement Plans & Tr.*, ___ U.S. ___, 133 S. Ct. 1184, 1196 (2013), the Supreme Court addressed a different part of the *DVI* opinion but did not disagree with the Third Circuit's discussion of "scheme liability."

[6] Both *Stoneridge* and *DVI* also held that the reliance element of a "scheme" claim could not be established where the defendants' allegedly deceptive conduct was never revealed to investors.  *See Stoneridge*, 552 U.S. at 159, 128 S. Ct. at 769 (plaintiff "cannot show reliance upon any of [defendants'] deceptive acts except in an indirect chain that we find too remote for liability."); *DVI, Inc.*, 639 F.3d at 648 ("Here, as in *Stoneridge*, plaintiffs' claims fail because they cannot demonstrate they relied on Clifford Chance's own deceptive conduct.").  In this case, plaintiffs similarly contend that Mr. Keller's allegedly "deceptive" act – entering into an agreement to transfer some of his personal shares – was not disclosed to the market.  Compl. ¶¶ 222 312.  Just as in *Stoneridge* and *DVI*, that assertion precludes any showing of reliance, which is an additional reason the "scheme" claim against Mr. Keller should be dismissed.  *See Trustcash*, 668 F. Supp. 2d at 662 & n.5.

**B.      Plaintiffs Have Not Alleged that Mr. Keller Engaged in Any Deceptive or Manipulative Act.**

Even if their "scheme" liability theory were not barred for the foregoing reasons, plaintiffs have failed to allege that Mr. Keller engaged in any "deceptive act" in connection with the purchase or sale of securities.  A lawful agreement to give away shares is neither deceptive nor manipulative, and there are no allegations that Mr. Keller engaged in any trading of Liquid Holdings stock that was intended to mislead investors or create a false impression of supply and demand.[7]

"'The gravamen of manipulation is deception of investors into believing that prices at which they purchase and sell securities are determined by the natural interplay of supply and demand, not rigged by manipulators.'"  *GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 205 (3d Cir. 2001) (quoting *Gurary v. Winehouse*, 190 F.3d 37, 45 (2d Cir. 1999)); *see ATSI Comms., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 100 (2d Cir. 2007) ("manipulation 'connotes intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities'") (quoting *Ernst & Ernst*, 425 U.S. at 199, 96 S. Ct. at 1384).  However, "'[m]anipulation' is 'virtually a term of art when used in connection with securities markets.'" *Santa Fe*, 430 U.S. at 476, 97 S. Ct. at 1302 (quoting *Ernst & Ernst*, 425 U.S. at 199, 96 S. Ct. at 1384).  "The term refers generally to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity." *Santa Fe*, 430 U.S. at 476, 97 S. Ct. at 1302.  No such practices are alleged here.

---

[7] Although Rules 10b-5(a) and (c) "encompass a wide range of activities and are not limited to the prohibition of market manipulation," *In re Alstom S.A.*, 406 F. Supp. 2d at 474 n.37, plaintiffs' claim against Mr. Keller here could only be categorized either as a claim for participating in a "scheme" to make alleged misstatements (inactionable for reasons already discussed) or a "scheme" to manipulate the price of Liquid Holding stock (which plaintiffs have failed to adequately allege).

The Third Circuit requires a section 10(b) plaintiff asserting a manipulation claim "to establish that the alleged manipulator injected 'inaccurate information' into the market or created a false impression of market activity . . . ." *GFL Advantage Fund*, 272 F.3d at 205; *see also ATSI Comms.*, 493 F.3d at 100 (courts evaluating manipulation claims generally ask whether an allegedly manipulative "transaction sends a false pricing signal to the market"). In addition, a manipulation claim requires a showing that the defendant created that false impression "*for the purpose* of artificially depressing or inflating the price of the security." *Jones v. Intelli-Check, Inc.*, 274 F. Supp. 2d 615, 628 (D.N.J. 2003) (emphasis added).

Plaintiffs make no such allegations concerning Mr. Keller. His only allegedly "deceptive" act was to agree privately to give away some of his Liquid Holdings stock. *See* Compl. ¶ 311 ("The devices, schemes, and artifices constituting the Scheme Defendants' manipulative, deceitful, and fraudulent conduct consist of the Scheme Defendants' Stock Transfer Agreement disclosed by Liquid in the September 24, 2015 Form 8-K."). Plaintiffs have not explained how that alleged agreement could be unlawful or deceptive in its own right. As the Third Circuit has recognized, "it is unreasonable to infer unlawful intent from lawful activity alone." *GFL Advantage Fund*. 272 F.3d at 207 (internal quotation and citation omitted).

There also is no allegation that the alleged agreement to give away shares "injected 'inaccurate information' into the market or created a false impression of market activity." *See GFL Fund*, 272 F.3d at 207 (lawful short selling was not market manipulation even though it may have legitimately impacted stock price); *Rabin v. NASDAQ OMX PHLX LLC*, ___ F. Supp. 3d ___, 2016 WL 1619272, at *17 (E.D. Pa. Apr. 21, 2016) (dismissing manipulation claim based on market makers' lawful options trading strategy). Because the IPO had not yet occurred, there was no market for Liquid Holdings stock at the time of the alleged agreement,

and it therefore could not have affected any market price.  Even if there had been a market, a private agreement to give shares to Mr. Von Allmen would not have injected *inaccurate* information into that market.  *See GFL Advantage Fund*,  272 F.3d at 208.

Finally, there is no plausible allegation that Mr. Keller agreed to give away some of his shares "for the purpose of artificially depressing or inflating the price" of Liquid Holdings stock. *Intelli-Check*, 274 F. Supp. 2d at 628.  The closest plaintiffs come to such an allegation is their assertion that Mr. Keller agreed to give away shares to ensure "the consummation of the IPO." Compl. ¶ 312.  They speculate – with no supporting factual allegation – that Mr. Von Allmen would not have invested in the IPO unless he received additional shares at no cost and that Mr. Keller gave away the shares because he wanted to collect a cash bonus that was contingent on the Company's completion of an IPO.  *Id.*  But this theory is far worse than speculative.  *See, e.g., ATSI Comms.*, 493 F.3d at 104 (affirming dismissal of manipulation claim based on speculative inferences).  It requires the Court to assume that Mr. Keller was willing to give away his portion of Liquid Holding stock worth up to $6.6 million to secure a cash bonus of $254,247.[8]  *See* Compl. ¶ 315.  Such a trade would not have been economically rational, and plaintiffs' "scheme" claim against Mr. Keller is not plausible.

## II.    PLAINTIFFS HAVE NOT PROVIDED PARTICULARIZED FACTUAL ALLEGATIONS SUPPORTING A "STRONG INFERENCE" OF SCIENTER.

In addition to failing to explain how Mr. Keller's pre-IPO transfer of stock could amount to fraud, the complaint fails to establish that Mr. Keller acted with anything approaching fraudulent intent.  This obvious pleading failure also requires dismissal.  *See ATSI Comms.*, 493 F.3d at 101; *Intelli-Check*, 274 F. Supp. 2d at 628.

---

[8] $6.6 million is the product of the $9.00 per share offering price times the 732,292 shares allegedly given to Mr. Von Allmen by Mr. Keller and Mr. Ferdinand in 2014. *See* Compl. ¶ 314.

The Exchange Act requires a section 10(b) plaintiff to set forth particularized factual allegations that give rise to a "strong inference" that the defendant acted with the required intention to deceive, manipulate, or defraud. 15 U.S.C. § 78u-4(b)(2)(A); *see Tellabs, Inc.*, 551 U.S. at 313, 127 S. Ct. at 2504. Pleading a "strong inference" of scienter requires allegations from which the inference of fraudulent intent is "more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference . . . ." *Id.* at 314, 127 S. Ct. at 2504-05.

In considering whether the necessary "strong inference" of scienter has been alleged, the allegations in the complaint "must be considered collectively; the significance that can be ascribed to an allegation of motive, or lack thereof, depends on the entirety of the complaint." *Id.* at 325, 127 S. Ct. at 2511. After *Tellabs*, "'motive and opportunity' may no longer serve as an independent route to scienter," which must be assessed by weighing "culpable and nonculpable inferences" from the allegations as a whole. *Avaya*, 564 F.3d at 277. "Catch-all allegations that defendants stood to benefit from wrongdoing and had the opportunity to implement a fraudulent scheme are not sufficient." *Advanta*, 180 F.3d at 535.

Plaintiffs' principal scienter allegation concerning Mr. Keller is that he was motivated to participate in the alleged "scheme" by the prospect of receiving a deferred cash bonus if Liquid Holdings successfully completed an IPO. Compl. ¶ 312. Pleading scienter based on a defendant's allegedly fraudulent motive requires allegations of "concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged." *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 170 (2d Cir. 2000); *see GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 237 (3d Cir. 2004) (same).

In this case, permitting an inference of scienter to be drawn from a term in Mr. Keller's ordinary compensation arrangements would "effectively eliminate the state of mind requirement as to all corporate officers and defendants." *In re Nice Systems, Ltd. Sec. Litig.*, 135 F. Supp.2d 551, 583 (D.N.J. 2001) (citing *Melder v. Morris*, 27 F.3d 1097, 1102-03 (5th Cir. 1994)); *see GSC Partners CDO Fund*, 368 F.3d at 238 (collecting cases). Moreover, as already discussed, plaintiffs' "motive" theory illogically assumes that Mr. Keller would give away stock worth millions of dollars to ensure a bonus of roughly $250,000, and that he would have done so even though that bonus would have been substantially higher if the IPO occurred in 2014 instead of 2013. *See* Prospectus at 134 (describing formula for determining bonus). Plaintiffs' unsubstantiated guess as to Mr. Keller's alleged motivation for transferring stock to Mr. Von Allmen falls far short of supporting an inference of fraudulent intent that is "cogent and at least as compelling as any opposing inference . . . ." *Tellabs*, 551 U.S. at 314, 127 S. Ct. at 2504-05.

The complaint also does not plausibly allege that Mr. Keller had the *opportunity* to commit fraud. Plaintiffs admit that Mr. Keller left Liquid Holdings by May 2013, months before the IPO. Compl. ¶ 26. He therefore could not have caused the IPO to happen or controlled the content of the Liquid Holdings disclosures that are at the heart of plaintiffs' "scheme" allegations. *See* Compl. ¶ 312.

Given the lack of any plausible "motive and opportunity" allegations, plaintiffs faced an even greater burden to come forward with particularized facts establishing Mr. Keller's conscious misbehavior or recklessness. *Advanta*, 180 F.3d at 535; *In re Bio-Tech. Gen. Corp. Secs. Litig.*, 380 F. Supp. 2d 574, 583 (D.N.J. 2005). This requires factual allegations showing "reckless conduct by the defendant which is at least conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the

danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Nice Systems*, 135 F. Supp. 2d at 585 (citation and internal quotation marks omitted); *see Suprema Specialties, Inc.*, 438 F.3d at 276.

Plaintiffs assert without foundation that Mr. Keller's "actual knowledge" of the alleged disclosure violations shows his scienter.  Compl. ¶ 313.  But Mr. Keller was not a Liquid Holdings director or officer at the time of any challenged statement, and there is no plausible allegation that he had any input as to the contents of any such disclosures or even knew about their contents before they were filed.  Plaintiffs therefore have not plausibly alleged that he was in a position to have "actual knowledge" of any alleged disclosure violation, and, as discussed above, an alleged failure of disclosure is the centerpiece of plaintiffs' "scheme" claim.

In passing, plaintiffs suggest that an inference of scienter also can be drawn from the inclusion of hypothetical claims against Mr. Keller and others for "breach of contract" or other matters in schedules filed at the outset of the Company's bankruptcy case.  *See* Compl. ¶ 257.  But as of now neither the debtor Liquid Holdings nor its bankruptcy trustee has asserted any claim against Mr. Keller, and in any case Mr. Keller would vigorously dispute the premise of any such claim.  "[B]lanket assertions" or "generalized imputations of knowledge" are not sufficient to support any inference of scienter, much less the required "strong inference."  *Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d at 282 (citation omitted).[9]

---

[9] Elsewhere, plaintiffs assert that an SEC investigation concerning Liquid Holdings is circumstantial evidence of other defendants' scienter, Compl. ¶ 287, but plaintiffs do not make any such allegation as to Mr. Keller.  Even if they had done so, the mere existence of a regulatory inquiry would not support a strong inference of scienter.  *See In re Manulife Fin. Corp. Sec. Litig.*, 276 F.R.D. 87, 102 (S.D.N.Y. 2011); *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1162 (C.D. Cal. 2007).

## III.    PLAINTIFFS HAVE FAILED TO ALLEGE LOSS CAUSATION.

A plaintiff asserting a "manipulation" claim under Rules 10b-5(a) and (c) also bears the burden to establish "loss causation," that is, that the plaintiff's reliance on the defendant's allegedly deceptive actions "proximately caused plaintiff's damages." *Rabin*, 2016 WL 1619272, at *16 (quoting *Jones*, 274 F. Supp. 2d at 627-28); *see Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342, 125 S. Ct. 1627 (2005); *Lentell*, 396 F.3d at 172.

"The relevant inquiry for loss causation purposes is whether the disclosure in question made some part of a *previously undisclosed* truth known." *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 285 (S.D.N.Y. 2008) (emphasis added).   The Supreme Court decision in *Dura* "requires plaintiffs to disaggregate those losses caused by 'changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events,' from disclosures of the truth behind the alleged misstatements." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 36 (2d Cir. 2009) (quoting *Dura*, 544 U.S. at 342-43, 125 S. Ct. at 1632); *see In re Intelligroup Sec. Litig.*, 468 F. Supp. 2d 670, n. 10 (D.N.J. 2006) ("The Third Circuit has always followed an approach largely similar to that spelled out by the Supreme Court in *Dura*.").   A plaintiff's claim fails when it has not alleged "facts which, if proven, would show that its loss was caused by the alleged [fraud] as opposed to intervening events.'" *Lentell*, 396 F.3d at 174 (citation and internal quotation marks omitted).

In this case, plaintiffs do not plausibly allege that any allegedly manipulative conduct by Mr. Keller was the cause of their putative loss.   To the contrary, the complaint starkly admits that "the Company's stock had already lost virtually its entire value" by the time of the September 24, 2015 Form 8-K in which Liquid Holdings disclosed Mr. Keller's alleged pre-IPO agreement to give shares to Mr. Von Allmen.  Compl. ¶ 2.  By the date of that "corrective disclosure," the stock price already had declined from $9.00 per share to $0.09 per share.

Compl. ¶ 224.  Plaintiffs have not plausibly connected any part of that price decline to the "revelation" of the previously undisclosed agreement to transfer shares, and they acknowledge that the actual transfer of stock in February 2014 was disclosed much earlier than the Form 8-K in September 2015  *See* Compl. ¶ 222.

Plaintiffs allege that the stock price declined by one cent per share on the day that Liquid Holdings filed the September 2015 Form 8-K, *id.*, but the complaint makes no effort to connect that price decline to the disclosure of the alleged stock transfer agreement as opposed to other factors, including disclosures included in the same filing.  *See* Compl. ¶ 222.  Plaintiffs' inability to disaggregate the effects of the alleged "corrective disclosure" in September 2015 from other factors that might have affected the price of Liquid Holdings stock is an additional ground for dismissal of their "scheme" claim against Mr. Keller.  *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007) (after *Dura*, "something beyond the mere possibility of loss causation must be alleged").

## IV.   MR. KELLER IS NOT LIABLE AS A "CONTROLLING PERSON" FOR ANY ALLEGED SECURITIES VIOLATION BY LIQUID HOLDINGS.

Count V of the complaint asserts claims under section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against the "Section 20(a) Defendants" and the "Scheme Defendants," but all of the allegations made in that count relate to the "control" allegedly exercised by the "Section 20(a) Defendants," and Mr. Keller is not identified as one of those defendants  *See* Compl. ¶¶ 320-25.

"Controlling person" claims under section 20(a) require a plaintiff to establish that (1) the defendant controlled another person or entity; (2) the controlled person or entity committed a primary violation; and (3) the defendant was a "culpable participant" in the fraud.  *Belmont v. MB Inv. Partners*, 708 F.3d 470, 484-85 (3d Cir. 2013);  *Rochez Bros., Inc. v. Rhoades*, 527 F.2d

880, 890 (3d Cir. 1975).  Plaintiffs' "controlling person" claim against Mr. Keller fails to satisfy every one of these requirements.[10]

There are no factual allegations that would support an inference that Mr. Keller was in control of Liquid Holdings in connection with any challenged statement.  "Control" means "the power to direct or cause the direction of the management and policies of a person . . . ."  *Rochez Bros., Inc.*, 527 F.2d. at 890 (citing 17 C.F.R. § 240.12b-2).  "[C]ontrol in this context is not the mere ability to persuade, but almost always means the practical ability to *direct* the actions of people who issue or sell securities."  *In re Alstom S.A.*, 406 F. Supp. 2d at 487 (emphasis in original; internal quotation and citations omitted).  Many factors are considered in determining whether a person is a "controlling person," but courts give "heavy consideration to the power or potential power to influence and control the activities of a person."  *Rochez Bros.*, 527 F.2d at 890-91.

Plaintiffs admit that Mr. Keller left Liquid Holdings in May 2013, months before its IPO. Compl. ¶ 26.  There are no allegations that he had any title, position, or corporate responsibilities with the Company after his departure, and in fact he had none.  His only continuing connection to the Company was his ownership of stock, which plaintiffs allege declined from 10.76% at the time of the IPO to 6.4% by March 2014.  Compl. ¶ 76.  That compares with the 48% and 32% of shares held by Liquid Holdings' directors and officers as a group on the same dates (a group that did not include Mr. Keller).  *Id*.  No plausible inference can be drawn from these facts that Mr. Keller could direct, or even influence, the content of Liquid Holdings public statements.

---

[10] Plaintiffs have failed to allege any primary violation by Liquid Holdings for reasons addressed by other moving defendants.  To the extent relevant, Mr. Keller refers to and incorporates their arguments by reference.

Nor have plaintiffs provided factual allegations that would support a plausible inference of Mr. Keller's "culpable participation" in any challenged statement.  Congress did not intend for controlling persons to be the "insurer against fraudulent activities of another" but only to impose liability on controlling persons who were in some "meaningful sense" culpable participants in the fraud.  *Belmont*, 703 F.3d at 485 (quoting *Rochez Bros.*, 527 F.2d at 885).  A plaintiff seeking to establish section 20(a) liability therefore must show that a "controlling" defendant's conduct "was deliberate and done intentionally to further the fraud."  *Rochez Bros.*, 527 F.2d at 890.  The first step is to show that the defendant had "some actual knowledge of the fraudulent activity taking place or knowledge must be imputed to him or her . . . ."  *Belmont*, 703 F.3d at 485 (citation omitted).  Where, as here, a plaintiff does not allege that the alleged controlling person had knowledge of the underlying fraudulent acts, there can be no liability under section 20(a).  *Belmont*, 703 F.3d at 485.

## <u>CONCLUSION</u>

For all of the foregoing reasons, defendant Robert D. Keller respectfully submits that the claims asserted against him in the amended complaint should be dismissed with prejudice.

Dated:  Short Hills, New Jersey        DLA PIPER LLP (US)
       October 31, 2016


By:  s/ Michael D. Hynes          
       Michael D. Hynes

Michael D. Hynes
Steven R. Marino
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey  07078-2704
Tel.:    (973) 520-2550
Fax:    (973) 520-2551

      - and -

John J. Clarke, Jr. (admitted *pro hac vice*)
john.clarke@dlapiper.com
1251 Avenue of the Americas
New York, New York 10020-1104
Tel.:    (212) 335-4500
Fax:    (212) 335-4501

Attorneys for Defendant Robert D. Keller